**UNITED STATES of America, Plaintiff**

**v.**

**Marcus CANADY, Defendant.**

**No. 93–CR–116L.**

United States District Court,
W.D. New York.

March 19, 1996.

Paul J. Vacca, Jr., Rochester, New York, for plaintiff.

Christopher V. Taffe, Assistant United States Attorney, Rochester, New York, for defendant.

### DECISION AND ORDER

LARIMER, Chief Judge.

The defendant in this case, Marcus Canady, was charged in a two-count indictment with possession with intent to distribute co-

caine in violation of 21 U.S.C. § 841(a)(1) and with using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Canady waived his right to a jury trial and the case was tried in a one-day bench trial on January 24, 1994.

On February 2, 1994, I issued a Decision and Order finding defendant guilty on both counts of the indictment. I subsequently sentenced Canady to a term of imprisonment of eight years and five months.

Canady has now filed a motion, *pro se,* to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. In his motion, Canady raises three grounds for relief: (1) the court did not announce its verdict in open court in the presence of the defendant; (2) the court erred in finding that the firearms in question were "used" in relation to a drug offense; and (3) Canady was denied his right to effective assistance of counsel on appeal because his appellate attorney did not raise grounds (1) or (2) on direct appeal. For the reasons that follow, the motion is denied.

### DISCUSSION

**I. Announcement of Verdict in Open Court**

At the conclusion of the trial on January 24, 1994, I reserved decision, stating to defendant that "I want to consider the cases submitted by you and your lawyer, and I will get a decision to you and your lawyer as soon as I can." Transcript at 160. I issued my Decision and Order on February 2, 1994.

Defendant now contends that this violated Rule 43(a) of the Federal Rules of Criminal Procedure, which states:

> **(a) Presence Required.** The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

Defendant contends that because the court issued a written decision, a copy of which was mailed to his attorney, he was denied his right to be present at the "return of the verdict."

I am not persuaded by this argument. Although there do not appear to be any reported cases directly addressing this issue, I believe that the most logical interpretation of Rule 43(a)'s use of the word "verdict" is that the rule is referring to the return of a jury verdict, not the issuance of a decision after a bench trial. For one thing, Rule 31, which deals with verdicts, states that the verdict "shall be returned by the *jury* to the judge in open court." Fed.R.Cr.P. 31(a) (emphasis added). Thus, the rules appear to assume that the word "verdict" means a jury verdict.

Second, the reasons underlying a defendant's right to be present at trial do not support a right, after a bench trial, to have the court announce its findings in the defendant's presence. "[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome *if his presence would contribute to the fairness of the procedure.*" *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987) (emphasis added). The Supreme Court has "emphasized that this privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'" *Id.* (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 106–07, 54 S.Ct. 330, 332–33, 78 L.Ed. 674 (1934)). Thus, "the existence of a right to be present depends upon a conclusion that absence could, under some set of circumstances, be harmful." *Polizzi v. United States,* 550 F.2d 1133, 1138 (2d Cir.1976).

This reasoning suggests why a defendant should be allowed to be present when the jury announces its verdict. Things can go wrong when a jury verdict is announced. It may appear that the verdict is less than unanimous, incomplete, or inconsistent. Once the jurors have been dismissed, it can be difficult or impossible to resolve such problems. By being present at such a critical moment, a defendant can express his concerns to his attorney, or, through his counsel, to the court.

These concerns, however, do not present themselves in the context of the issuance of a written decision after a non-jury trial. There

is no danger of a non-unanimous verdict, and any possible errors or discrepancies in the decision can be addressed in a post-trial motion or on appeal. Thus, being present to hear the decision read in open court would be "useless" to the defendant.

Furthermore, my decision would not have been altered by my announcing it in the presence of the defendant. Even if he had a right to be present, then, the issuance of a written decision would not constitute grounds for relief under § 2255. *See United States v. Mackey*, 915 F.2d 69, 74 (2d Cir.1990) (no prejudice occurred when defendant was absent during jury's announcement of verdict, since "it [could not] be plausibly contended that his presence would have altered the outcome of the verdict").

## II. "Use" of a Firearm

In his motion, defendant contends that the proof was insufficient to support the court's finding that the guns were "used" to facilitate a drug offense because there was no evidence that any drug transaction had occurred or was occurring at the time of defendant's arrest.

After the motion was filed, the Supreme Court announced its decision in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The Court in *Bailey* held that to obtain a conviction for use of a firearm under § 924(c)(1), the Government must prove "an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." —— U.S. at ——, 116 S.Ct. at 505. "Use," the Court said, would include activities such as "brandishing, displaying, bartering, striking with, . . . firing or attempting to fire, a firearm," or referring to a firearm so as to intimidate another person. *Id.* at ——, 116 S.Ct. at 508. However, the Court added, the "inert presence of a firearm, without more, is not enough to trigger § 924(c)(1). . . . A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds." *Id.*

After *Bailey* was issued, defendant filed a supplemental brief arguing that the § 924(c)(1) charge should also be vacated under *Bailey*. He contends that the evidence did not show that he "used" the guns because the guns were found under a cushion on a loveseat where he was sitting. The drugs were found under the loveseat's other cushion.

Defendant's first argument is based on an incorrect assertion. Defendant states in his motion that the court "Erred In Its Finding That The Gun Was 'Used' to Facilitate a Drug Transaction . . ." This contention is refuted by both my prior decision and the indictment itself. I did not find that the guns facilitated a drug *transaction,* but that they were used during and in relation to a drug trafficking crime. That crime, charged in Count 1 of the indictment, was not for distributing drugs, but for *possessing* drugs with *intent* to distribute them.

■ That offense was proved beyond a reasonable doubt. As I noted in my decision, the cocaine was contained in "nine separately wrapped bags of cocaine, in a form used for distribution." Decision and Order, Feb. 2, 1994, at 7. I also pointed out that defendant was also found in possession of guns and a telephone beeper, both of which are "tools of the narcotics trade . . ." *Id.* at 8. Thus, there was enough evidence to conclude that defendant intended to distribute the drugs. No actual distribution was necessary to find him guilty of the offense charged.

■ In response to defendant's second argument, concerning the impact of *Bailey,* the Government concedes that the evidence at trial was insufficient to support a finding of "use" of a firearm under *Bailey.* I agree. As stated, the two handguns were found under the cushion of a loveseat. The cocaine was found under the other cushion at the opposite end of the loveseat. Thus, the guns were merely lying "inert" near the drugs, which the Supreme Court said is not enough for a conviction for "using" a firearm under § 924(c)(1).[1]

**1.** Although the Government has not raised this issue, I find that *Bailey* should be applied retroactively to this case. *Bailey* did not involve a change in criminal procedure, but changed the substantive construction of § 924(c)(1) in this circuit. Cases altering substantive criminal law do apply retroactively, since "a statute cannot 'mean one thing prior to the Supreme Court's

The Government notes, however, that the indictment did not charge only that defendant "used" a firearm, but that he "use[d] and carr[ied] a firearm ..." The Assistant United States Attorney also stated in his opening statement at trial that defendant was accused of having "unlawfully used and carried a firearm, that is a hand gun, during and in relation to a drug trafficking offense." Transcript at 8.

The Supreme Court in *Bailey* did not address the meaning of the word "carry" in § 924(c)(1). Noting that the Court of Appeals for the District of Columbia Circuit (whose decisions were on appeal in *Bailey*) had not considered the defendants' liability under the "carry" prong of the statute, the Court remanded for consideration of that basis for upholding the convictions. *Bailey,* ____ U.S. at ____, 116 S.Ct. at 509.

Thus, *Bailey* did not affect earlier case law construing the word "carry" in § 924(c)(1). Moreover, since the courts prior to *Bailey* had "generally agreed that 'carrying' [wa]s to be interpreted narrowly, while 'use' [wa]s interpreted more broadly," *United States v. Pineda–Ortuno,* 952 F.2d 98, 103 (5th Cir.), *cert. denied,* 504 U.S. 928, 112 S.Ct. 1990, 118 L.Ed.2d 587 (1992), it would seem that the Supreme Court would not be as inclined to narrow the generally-accepted interpretation of "carrying" as it was to narrow the definition of "using."

The fact that defendant in the instant case did not "use" the firearms under *Bailey*'s construction of the word "use," then, does not automatically mean that his conviction must be vacated. If the evidence was sufficient to prove beyond a reasonable doubt that he "carried" the guns during and in relation to his possession of the cocaine with intent to distribute, the conviction can be sustained.

█ In my prior decision, my finding that defendant used the firearms, under the then-applicable definition of "use," made it unnecessary to address whether he had carried the firearms. Since the case was tried under both theories, however, and because I remain the factfinder, there is no reason why I cannot consider that issue now. This approach is fully consistent with that taken in *Bailey,* for the Supreme Court in that case, despite finding the evidence insufficient to demonstrate "use" of a firearm, did not order the conviction to be vacated, but remanded for consideration of whether the jury verdict could be upheld on a "carrying" theory. *Bailey,* ____ U.S. at ____, 116 S.Ct. at 509. *See also United States v. Price,* 76 F.3d 526, 528–30 (3d Cir.1996) (though trial court's instruction on "use" was erroneous in light of *Bailey,* jury's guilty verdict could still be upheld where evidence supported alternative theory that defendant had aided and abetted codefendant's carrying of weapon); *cf. United States v. Moore,* 76 F.3d 111, 113–114 (6th Cir. Feb. 22, 1996) (conviction could not be upheld where court could not say that jury, if presented with correct law under *Bailey,* would necessarily have found defendant guilty of carrying firearm).

█ After reviewing the trial transcript, I find that the Government succeeded in proving beyond a reasonable doubt that defendant did carry the firearms in connection with the drug offense. Although the guns were not found on defendant's person, their proximity to him is sufficient to constitute "carrying" as that term has been construed by the courts. In addition, the evidence showed that defendant had literally carried the firearms before they were found.

As noted in my prior decision, defendant's fingerprint was found on one of the guns. The conclusion is inescapable, then, that at

interpretation and something entirely different afterwards.'" *United States v. Dashney,* 52 F.3d 298, 299 (10th Cir.1995) (quoting *United States v. Shelton,* 848 F.2d 1485, 1489 (10th Cir.1988)). *See Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (prohibiting retroactive application of new constitutional rules of criminal procedure); *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (cases

changing interpretation of criminal statute in such a way that act for which defendant was convicted is no longer considered to violate statute should be applied retroactively to avoid miscarriage of justice); *Ianniello v. United States,* 10 F.3d 59 (2d Cir.1993) (applying retroactively a Second Circuit case that added new element for conviction under RICO statute; noting that *Teague* did not affect continuing vitality of *Davis* ).

some point defendant had physically held the gun, which by anyone's definition would constitute "carrying."

I also find, as I found in my prior decision, that defendant had put both the guns and the drugs under the seat cushion. *See* Decision and Order, Feb. 2, 1994, at 7. He admitted owning one of the two guns, and he clearly had access to and control over the house where the guns were found. In addition, when the police officer and defendant entered the house together, defendant's jacket was on the same loveseat where the guns were hidden. The evidence, then, suggests that defendant had entered the house, put his jacket on the loveseat, and stashed the guns and cocaine under the seat cushions. *See United States v. Bailey*, 36 F.3d 106, 117 (D.C.Cir.1994) ("whether the defendant carried the gun with, or to or from the location of, the drugs will be the most probative evidence that he carried it during and in relation to a drug trafficking offense"), *rev'd on other grounds,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

Furthermore, decisions by several Courts of Appeals, including the Second Circuit, indicate that a defendant may be found to have been carrying a weapon even if the weapon was not in his hands or on his person, if the weapon was within his immediate reach. *United States v. Morris*, 977 F.2d 617, (D.C.Cir.1992), was a case very similar to the case at bar. In *Morris,* police officers entered an apartment to execute a search warrant and found the defendant seated on small couch. Their search of the apartment yielded drugs in various locations. When they looked under the cushions on the couch where the defendant had been sitting, the officers found two loaded pistols. There were no drugs in the couch. Just as in the instant case, the defendant was convicted at trial for using or carrying a firearm during and in relation to a drug trafficking offense under 18 U.S.C. § 924(c)(1), and of possession with intent to distribute cocaine under 21 U.S.C. § 841.

On appeal, the District of Columbia Circuit affirmed. Although the court primarily focused on the "use" prong of § 924(c)(1), the court noted that

the evidence could also support a charge of "carrying" the two guns found under the couch on which Morris was sitting. In either instance, of course, the "using" or "carrying" must be "in relation to" the predicate offense, in this case, possession with intent to distribute. To affirm a "carrying" conviction, we would employ the same analysis as we use here [regarding "use"], linking the guns to the possession of the drugs.

*Id.* at 621 n. 1 (Citations omitted).

The Fourth Circuit also affirmed a conviction of "carrying" a firearm in violation of § 924(c)(1) even though the defendant was not physically carrying the weapon at the time. In *United States v. Brockington,* 849 F.2d 872 (4th Cir.1988), the defendant was arrested as he was riding in a taxicab. A search of his person yielded several vials and bags containing drugs, and a loaded pistol was found under the floormat directly below his seat. He was charged and convicted of carrying a firearm under § 924(c)(1). The court held that this evidence was sufficient to support his conviction. *Id.* at 876.

*Brockington* was cited with approval in *United States v. Feliz–Cordero,* 859 F.2d 250 (2d Cir.1988), in which the court reversed a conviction under § 924(c)(1) on the ground that the presence of a firearm in a dresser drawer that was not readily accessible to the defendant during a drug transaction was not sufficient to show that the defendant had used or carried the firearm during and in relation to a drug offense. Citing *Brockington* as an example, however, the court stated that "a person cannot be said to 'carry' a firearm without at least a showing that the gun is within reach during the commission of the drug offense." *Id.* at 253. *See also United States v. Riascos–Suarez,* 73 F.3d 616 (6th Cir.1996) (for defendant to be convicted of "carrying" firearm under § 924(c)(1), "the firearm must be immediately available for use—on the defendant or within his or her reach"); *United States v. Perez,* 989 F.2d 1111, 1115 (9th Cir.1993) (to satisfy element of carrying, weapon must be "available" during commission of the offense); *Pineda–Ortuno,* 952 F.2d at 103 (" 'carrying' requires a showing that the gun was in reach during the

**408**

commission of the drug offense"); *United States v. Eaton,* 890 F.2d 511, 512 (1st Cir. 1989) (presence of gun under front seat of truck defendant was driving was sufficient to show that he carried firearm), *cert. denied,* 495 U.S. 906, 110 S.Ct. 1927, 109 L.Ed.2d 291 (1990); *United States v. Evans,* 888 F.2d 891, 894–95 (D.C.Cir.1989) (jury could find that defendant carried gun "in the sense that it was within reach and available to protect him during his ongoing crime of possession with intent to distribute cocaine"), *cert. denied,* 494 U.S. 1019, 110 S.Ct. 1325, 108 L.Ed.2d 500 (1990); *United States v. Hoch,* 837 F.Supp. 542, 545 (W.D.N.Y.1993) ("the term 'carry' set forth in § 924(c)(1)" means that the gun is within reach during the commission of a drug offense).

These cases clearly support defendant's conviction in this case. Just as in *Morris,* the guns were located under the cushions of the chair on which defendant was sitting, at the same time that he was in constructive possession of the cocaine. The guns were easily accessible to him. The fact that the police officer was able to see one of them when defendant moved, and that the officer was able to grab the gun when defendant was looking the other way, also indicates that they were easily available and were not buried deeply under the seat. In addition, the proof that defendant carried them in relation to the drug offense is even stronger here than it was in *Morris* because the drugs here were located in the same loveseat just a few feet from the guns.

Based on this evidence, then, I find beyond a reasonable doubt that defendant carried the firearms during and in relation to the crime of possession of cocaine with intent to distribute. His motion to vacate his conviction on Count 2 is therefore denied.

### III. Ineffective Assistance of Appellate Counsel

The only basis for defendant's claim that he was denied his right to effective assistance of counsel on appeal is that his appellate attorney did not raise the other two claims presented in this § 2255 motion. Since I have found both of them to be without merit, the failure to raise them on appeal clearly did

not constitute ineffective assistance. This claim is therefore also meritless.

### CONCLUSION

Defendant's motion to vacate his conviction under 28 U.S.C. § 2255 is denied.

IT IS SO ORDERED.