Abraham D. **OBJIO–SARRAFF,** Plaintiff,

v.

**UNITED STATES of America,** Defendant.

**Civil No. 96–1261 (HL).**

United States District Court,
D. Puerto Rico.

May 9, 1996.

Abraham D. Objio–Sarraff, Jesup, GA, Pro Se.

Jose O. Vazquez–Garcia, U.S. Attorney's Office District of P.R., Civil Division, Hato Rey, PR, for defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is Petitioner's *pro se* 28 U.S.C. § 2255 (1995) writ of habeas corpus seeking to vacate a judgment of conviction under Count IV for using or carrying a firearm during and in relation to a drug trafficking crime under 18 U.S.C.A. § 924(c)(1) (1996). Petitioner argues that the Supreme Court's recent interpretation of the word "use" in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)

warrants vacating his conviction under Count IV. The Government, in turn, maintains that *Bailey* has no effect on the outcome of Petitioner's conviction because he was convicted of "carrying" a firearm in relation to a drug trafficking crime, not "using" a firearm during the drug transaction. In light of *Bailey*'s interpretation of the word "use," the Court finds that Petitioner could not be convicted under section 924(c)(1) for either "using" or "carrying" a firearm during and in relation to a drug trafficking crime. Accordingly, the Court hereby **grants** the writ of habeas corpus and **vacates** Petitioner's conviction under Count IV.

## BACKGROUND

On January 25, 1991, the United States Customs Service and the Puerto Rico Bureau of Special Investigation conducted surveillance of an aircraft and its passengers coming from the Dominican Republic and landing at the Borinquen Airport in Aguadilla, Puerto Rico. The officers observed one of the airplane's crew members, Ramon Castro–Lara ("Castro"), leave the airport and meet with Petitioner, Abraham Objio–Sarraff, nearby in Aguadilla. After greeting each other, Castro entered Objio–Sarraff's automobile and the two men returned to the airport.

While Objio–Sarraff stood next to his car, Castro boarded the aircraft with two packages and, immediately thereafter, disembarked with a different bag. When Castro returned to Objio–Sarraff's car and placed the new package inside, the officers approached Castro and asked him for the bag. When they opened the bag, the officers found a little over 3,000 grams of cocaine inside. After the officers arrested Castro and Objio–Sarraff for unlawfully possessing the cocaine, the officers received Objio–Sarraff's consent to search the trunk of the automobile. There, they found a briefcase containing an unloaded revolver, live ammunition, and $6,000.00 in cash. At the airport, Objio–Sarraff admitted that he owned the briefcase.

Based on the illegal drug transaction and the presence of the revolver in Objio–Sarraff's automobile, on April 3, 1991 Objio–

Sarraff was convicted for (1) intentionally possessing 3,000 grams of cocaine with the intention of distributing the drug in violation of 21 U.S.C.A. § 841(a)(1) (1981) and 18 U.S.C.A. § 2 (1969), (2) unlawfully importing the cocaine from the Dominican Republic in violation of 21 U.S.C.A. § 952(a) (1995) and 18 U.S.C.A. § 2 (1969), (3) unlawfully possessing the cocaine on board an aircraft in violation of 21 U.S.C.A. § 955 (1981) and 18 U.S.C.A. § 2 (1969), and (4) knowingly and willfully carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C.A. § 924(c)(1) (1996).[1]

On July 9, 1991, the Court sentenced Objio–Sarraff to the minimum prison term, seventy-eight (78) months, for each of his convictions under Counts I, II, and III. The Court ordered Objio–Sarraff to serve these prison terms concurrently with each other. Based on his conviction under Count IV for "using" or "carrying" an unloaded firearm during and in relation to his drug trafficking crime, the Court, as mandated by law, imposed a prison term of sixty (60) months to be served consecutively with his 78 month sentence for a total prison term of one-hundred and thirty-eight (138) months. Shortly thereafter, the Court of Appeals affirmed the jury verdict and the concomitant prison sentence. *United States v. Castro–Lara*, 970 F.2d 976 (1st Cir.1992), *cert. denied*, 508 U.S. 962, 113 S.Ct. 2935, 124 L.Ed.2d 684 (1993).

1. 18 U.S.C.A. § 924(c)(1) (1996) states:

   Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, *uses* or *carries* a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.... (emphasis added).

2. Although Count IV of the indictment only charges Objio–Sarraff with "carrying" a firearm during and in relation to a drug trafficking crime, the Court instructed the jury that "using" or "carrying" a firearm violated the law. *See* Tr. Jury Trial at 461–62. Therefore, the Court shall address not only whether Objio–Sarraff could have been convicted for "carrying" a firearm under section 924(c)(1) but also whether he could have been convicted for "using" the firearm under the statute.

## DISCUSSION

■ Objio–Sarraff challenges his conviction under section 924(c)(1) and argues that he is being unlawfully deprived of his liberty in violation of the Constitution. Objio–Sarraff asserts that under *Bailey* he was neither "using" nor "carrying" a firearm on January 25, 1991 and, therefore, his conviction and subsequent sentence under Count IV should be vacated. The Government disagrees.[2] The Government maintains that Objio–Sarraff was "carrying" the weapon within the meaning of the statute. Because *Bailey*'s new non-constitutional rule of substantive law is retroactive, the Court shall consider Objio–Sarraff's petition. *See Sanabria v. United States*, 916 F.Supp. 106 (D.P.R.1996).[3]

## A. THE MEANING BEHIND *Bailey:*

On December 6, 1995, the Supreme Court found that an individual with a loaded pistol in the trunk of his automobile and an individual with an unloaded revolver in the locked trunk of her bedroom were not "using" a firearm during and in relation to any crime of violence or drug trafficking crime under section 924(c)(1). *Bailey v. United States*, —— U.S. ——, ——, 116 S.Ct. 501, 509, 133 L.Ed.2d 472 (1995). Based on the ordinary meaning of the term "use," the context in which the word was used in conjunction with "carry," and a comparison with the word "possession" in other criminal statutes, the Court narrowed the application of the "use"

3. The Court notes that Objio–Sarraff is entitled to collaterally attack his conviction under Count IV even though the First Circuit Court of Appeals affirmed his conviction for this charge in an earlier direct appeal. In an opinion accurately applying the law governing section 924(c)(1) convictions before *Bailey*, the First Circuit affirmed Objio–Sarraff's conviction for "using" or "carrying" the firearm during and in relation to the drug trafficking offense. *Castro–Lara*, 970 F.2d at 982–83. Normally, this Court would apply the law of the case and summarily deny Objio–Sarraff's attempt to get a second bite at the apple. However, the Supreme Court's decision in *Davis v. United States*, 417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974) permits Objio–Sarraff to collaterally attack his conviction because the *Bailey* decision issued after *Castro–Lara* has altered the meaning of the term "use" and, by implication, "carry" in section 924(c)(1). *See also Knight v. United States*, 37 F.3d 769, 772–73 (1st Cir.1994).

prong of the statute to individuals who actively employ the firearm. *Id.* at ——, 116 S.Ct. at 505.

The Court reasoned that Congress only wanted to punish active uses of a firearm in relation to a drug trafficking crime. If Congress wanted to punish simple possession of a firearm or the storage of a weapon, Congress could have used the term "possession" as it has in other criminal statutes. *Id.* at ——, 116 S.Ct. at 508. Moreover, if the term "use" was read expansively to include mere possession with the floating intent to use the weapon, this definition would swallow up the application of the word "carry" in the statute. *Id.* at ——, 116 S.Ct. at 507. Anytime a firearm was discovered on the person or near the person committing a drug trafficking offense, the individual could be convicted for "using" the weapon. Whether the individual was actually "carrying" the weapon would become an unnecessary and meaningless inquiry.

The Supreme Court offered examples of how Congress intended the term to be applied. When an individual brandishes, displays, barters with, strikes with, fires, or attempts to fire the weapon, the individual is "using" the weapon within the meaning of the statute. *Id.* at ——, 116 S.Ct. at 508. When the individual, however, merely uses the firearm to embolden his actions or to enhance his sense of security, the individual is not "using" the firearm under the statute. "[T]he inert presence of a firearm, without more, is not enough to trigger 924(c)(1). . . . A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession." *Id.* Furthermore, the concealment of the weapon near the offender in case the individual needs protection is not "use" under the statute.

Having resolved the intended meaning of the term "use" under the statute, the Supreme Court stopped short of ending all inquiries about the application of section 924(c)(1). The Court chose not to discuss the meaning of the term "carry." After *Bailey,* significant questions remain about the application of the statute to individuals who keep firearms for storage in their vehicles and in their homes while conducting drug transactions. The same questions that the Supreme Court found would create an "impossible line-drawing problem," "How 'at the ready' was the firearm? Within arm's reach? In the room? In the house? How long before the confrontation did he place it there? Five minutes or 24 hours?," may have to be asked to determine whether the individual was "carrying" the firearm under the statute. *Id.* at ——, 116 S.Ct. at 509. In fact, the Supreme Court remanded the case to the district court for an analysis of whether the storage of a loaded pistol in the trunk of the defendant's automobile and the storage of an unloaded revolver in the closet of an apartment constituted "carrying" the firearm.

## B. THE MEANING OF "CARRIES"

Although *Bailey* does not explain the meaning of "carry," *Bailey* does provide some guidance on how the courts should interpret this term. First, courts should begin with the plain and ordinary meaning of the term "carry." Second, from the Court's decision, it is clear that "carry" must take on a different meaning than "use." In fact, the term can not take on such an expansive meaning that it would completely overshadow the application of "use" and render the "use" prong irrelevant. Third, the term should not be interpreted in a way that subjects the mere possession of a firearm or the mere storage of a firearm to criminal punishment. As the *Bailey* Court reasoned, if Congress wanted to punish mere possession of the firearm in connection with drug trafficking crimes, Congress could have used the word "possession" alone.

In two recent cases, *United States v. Manning,* 79 F.3d 212 (1st Cir.1996) and *United States v. Ramirez–Ferrer,* 82 F.3d 1149 (1st Cir.1996), the First Circuit Court of Appeals considered the meaning of the term "carry." In *Manning,* the Court declined an invitation to "determine the precise contours of the 'carry' prong" because under any one of three definitions found in Webster's Third New International Dictionary the defendant was "carrying" a firearm under the statute.

*Manning,* 79 F.3d at 216. Moving a brief-case containing a loaded handgun and several pipe bombs from an automobile into a garage was "carrying" under the three definitions: " 'to move while supporting (as in one's hands or arms),' 'to move an appreciable distance without dragging,' and 'to bring along to another place.' " *Id.*

Approximately one month later, in *Ramirez–Ferrer,* the First Circuit acknowledged that these definitions create at least two ambiguities. The definitions do not specify (1) "whether the subject of 'to move' is the actor or the firearm—that is, whether 'move' is used here as a transitive or intransitive verb" or (2) whether the defendant's accessibility to the weapon is an element of "carrying." *Ramirez–Ferrer,* 82 F.3d at 1153–54. The First Circuit, however, decided that it did not need to resolve these ambiguities in *Ramirez–Ferrer.*

In that case police officers pursued three individuals traveling in a boat because an anonymous informant claimed that they were transporting cocaine. When the officers seized the boat, they discovered a loaded revolver covered by a T-shirt behind a storage compartment and near one of the members of the crew. Under the ambiguous definitions that the Court plucked from *Manning,* the Court found that the defendant seated near the weapon and the defendant which aided and abetted him were undoubtedly "carrying" the firearm. The defendants "*physically* caused the weapon in question to be transported" during and in relation to their drug trafficking crime. *Id.* Their actions, therefore, fit within the definitions of "carrying." Because the Court found that one of the defendants was "within easy reach" of the loaded weapon, the Court stopped short of determining whether an individual's accessibility to the firearm was a further requirement of "carrying." *Id.* The Court stated: "We express no opinion, however, on the theory that a conviction for 'carrying' may be upheld whenever a gun is merely present on a boat or other vehicle employed in a drug possession crime, *regardless of accessibility.*" *Id.* (emphasis added). If accessibility was required, the defendants' actions still constituted "carrying" under the definitions.

■ Beyond holding that the transport or the movement of a firearm from one place to another is required, the First Circuit's decisions in *Manning* and *Ramirez–Ferrer* do not provide this Court with much guidance. And, as the First Circuit pointed out, neither do the three definitions taken from Webster's Third New International Dictionary. Accordingly, like the Supreme Court in *Bailey,* this Court shall look to Black's Law Dictionary for the ordinary and plain meaning of the term "carry." According to Black's Law Dictionary, "carry" means "to bear, bear about, sustain, transport, remove, or convey. To have or bear upon or about one's person as a watch or weapon." Black's Law Dictionary 214 (6th ed. 1990).[4]

Evidently, the definition includes two significant requirements in order to find that an individual is "carrying" a firearm. First, the individual must be transporting or moving the weapon from one location to another. An individual who keeps a firearm for storage in a nearby dresser drawer or closet of a home, although within arm's length, is not "carrying" the weapon because she or he is not moving the firearm from one place to another. This is consistent with the First Circuit's decision in *Ramirez–Ferrer.* Second, the individual must have the weapon "upon or about one's person." In other words, the weapon must be within immediate accessible reach.[5]

Both requirements must be present: (1) transport; and (2) accessibility. An individual who moves the weapon from one location to another but does not have it within immediate accessible reach is not "carrying" the weapon under the statute. Similarly, an individual that has a weapon within immediate accessible reach but is not moving the weap-

---

**4.** The First Circuit has acknowledged the use of the Black's Law Dictionary definition for the term "carry" by the Supreme Court and other circuit courts of appeals. *See United States v. Ramirez–Ferrer,* 82 F.3d 1149 (1st Cir.1996).

**5.** The Court finds that the definitions in Webster's Third New International Dictionary require the same two elements: transport and accessibility.

on from one place to another is also not "carrying" the weapon under the statute.

This definition of the word "carry" does not render the "use" prong of the statute superfluous. Given the Supreme Court's narrow interpretation of "use" in *Bailey*, there are a number of instances when an individual may be "carrying" the firearm without actually "using" it. For example, the display of the firearm on a table or the reference to a firearm in a conversation are examples of "using" a firearm. However, the mere display of a firearm may not be "carrying" because the individual may not be moving it from one location to another. Similarly, the mere reference to a weapon may not be "carrying" because the individual may not be moving it all and because the firearm may not be within immediate accessible reach.

Finally, the Court's adoption of this definition of "carry" does not punish the mere storage or possession of a firearm. In fact, the Court's definition of "carry" ensures that the mere storage or possession of a firearm during and in relation to a drug trafficking offense will not be punished. The more inaccessible the firearm is to the individual, the more likely it is that the individual was merely storing or possessing the weapon. For example, an unloaded weapon hidden in the engine of an automobile is clearly inaccessible. The individual driving the vehicle is not "carrying" the weapon but rather storing it in an unreachable location.

Courts which have applied the "carry" prong of section 924(c)(1) since *Bailey* have reached the same result. *See United States v. Baker,* 78 F.3d 1241 (7th Cir.1996) (transporting a gun within reasonable reach and available for immediate use constitutes "carrying" under section 924(c)(1) without reaching question of whether a loaded gun in car trunk is within reasonable reach); *United States v. Moore,* 76 F.3d 111, 113 (6th Cir. 1996) (weapons that are immediately available for use and physically transported from one place to another are "carried" under section 924(c)(1)); *United States v. Hernandez,* 80 F.3d 1253 (9th Cir.1996) (gun in locked toolbox in a garage was not immediately available for use and, therefore, defendant was not "carrying" firearm under section 924(c)(1)); *United States v. Riascos–Suarez,* 73 F.3d 616, 623 (6th Cir.1996) (loaded weapon near driver's seat was immediately available for use, i.e. on the person or within reach, and, therefore, evidence supported conviction for "carrying"); *United States v. Canady,* 920 F.Supp. 402 (W.D.N.Y. 1996) (defendant was "carrying" firearms under section 924(c)(1) where guns were within the immediate reach of defendant and easily accessible); *Crowder v. United States,* 920 F.Supp. 675 (W.D.N.C. March 12, 1996) (defendant was "carrying" loaded pistol in cassette box of his vehicle under section 924(c)(1) because weapon was immediately accessible and within close proximity to his body).

Applying the teachings of *Bailey* to the instant case, the Court concludes that Objio–Sarraff could not have been convicted for either "using" or "carrying" a firearm during and in relation to a drug trafficking crime. In response to the Court's order to show cause why Objio–Sarraff's sentence under Count IV should not be vacated under *Bailey,* the Government appears to concede appropriately that Objio–Sarraff could not be convicted for "using" the unloaded revolver in the trunk of his automobile. The Supreme Court's finding in *Bailey* that a loaded pistol in a car trunk did not constitute "use" forecloses the Government from making any argument to the contrary.

The Government, however, rests its case on the "carry" prong of the statute. It argues that Objio–Sarraff was "carrying" the unloaded revolver in the trunk of his automobile during and in relation to his drug trafficking crime. The Court disagrees. The Government pushes for an expansive application of "carry" and overlooks the second part of the two-prong "carrying" test.

Clearly, Objio–Sarraff was transporting the weapon from one place to another in the trunk of his vehicle and, therefore, met the first prong of the two-part test. This finding, however, is a necessary but insufficient condition of "carrying." The Government must also demonstrate that Objio–Sarraff had immediate access to the weapon. In this case, however, Objio–Sarraff did not have immediate access to the unloaded weapon

**36**

inside a briefcase in the trunk of his automobile. During the course of the drug trafficking crime, Objio–Sarraff was either sitting in the front seat, driving in the front seat, or standing outside of the vehicle. The unloaded weapon inside the closed briefcase in the car trunk was not within Objio–Sarraff's immediate accessible reach. Had the Court found that Objio–Sarraff was "carrying" a firearm under these circumstances, the Court would be sanctioning the punishment of the storage of an unloaded weapon. Neither the language of section 924(c)(1) nor the *Bailey* decision permits this result.

An individual, like Objio–Sarraff, does not "carry" a firearm within the context of section 924(c)(1) when the individual stores an unloaded weapon in a briefcase in the locked trunk of her or his automobile and that weapon is beyond accessible reach. Accordingly, the Court hereby **grants** Objio–Sarraff's writ of habeas corpus. Objio–Sarraff's conviction under Count IV and his concomitant mandatory minimum consecutive sentence of 60 months is hereby **vacated.**

**IT IS SO ORDERED.**