**UNITED STATES of America, Plaintiff,**

**v.**

**Arthur LATTIMORE, Defendant.**

**No. 96–CV–6179L.**

United States District Court,
W.D. New York.

Nov. 14, 1996.

Christopher Taffe, Assistant U.S. Attorney, United States Attorney, Rochester, NY, for plaintiff.

William Clauss, Federal Public Defender, Rochester, NY, for defendant.

### DECISION AND ORDER

LARIMER, Chief Judge.

On February 28, 1995, after a jury trial, Arthur Lattimore was convicted on one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and one count of using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Lattimore

was sentenced by me to twenty-four months imprisonment on the cocaine count and sixty months imprisonment (to run consecutively) on the Section 924(c) count, for a total of eighty-four months imprisonment. Lattimore now has filed a motion, pursuant to 28 U.S.C. § 2255, to vacate his conviction and sentence on the Section 924(c) count. The Government opposes the motion. For the reasons that follow, the motion is granted.

## DISCUSSION

### I. *18 U.S.C. § 924(c) and Bailey v. United States*

Section 924(c)(1) of Title 18 United States Code provides in relevant part:

> Whoever, during and in relation to any ... drug trafficking crime ... *uses or carries* a firearm, shall, in addition to the punishment provided for such crime ... be sentenced to imprisonment for five years....

Only months after Lattimore was convicted and sentenced, the definition of what it means to 'use' a firearm within the meaning of this statute was clarified by the United States Supreme Court in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The Court in *Bailey* held that to obtain a conviction for use of a firearm under § 924(c)(1), the Government must prove "an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." —— U.S. at ——, 116 S.Ct. at 505. 'Use,' the Court said, would include activities such as "brandishing, displaying, bartering, striking with, ... firing or attempting to fire, a firearm," or referring to a firearm so as to intimidate another person. *Id.* at ——, 116 S.Ct. at 508. However, the "inert presence of a firearm, without more, is not enough to trigger § 924(c)(1).... A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds." *Id.* Thus, the Court held that the facts in the two consolidated cases under review, in which a firearm had been found in a bag in the locked trunk of one defendant's car, and in a footlocker in the other defendant's bedroom closet, were insufficient to support the defendants' convictions.

In so ruling, the Supreme Court implicitly overruled prior Second Circuit authority holding that a defendant could be convicted under § 924(c)(1) based on evidence that the firearm was physically available to the defendant or that the defendant intended to use it if the need arose. *See, e.g., United States v. Fermin,* 32 F.3d 674, 678 (2d Cir.1994) (firearm in closet), *cert. denied,* —— U.S. ——, 115 S.Ct. 1145, 130 L.Ed.2d 1104 (1995); *United States v. Torres,* 901 F.2d 205, 217–18 (2d Cir.) (firearm underneath mattress), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990); *United States v. Alvarado,* 882 F.2d 645, 654 (2d Cir.1989) (firearm inside locked safe), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990); *United States v. Meggett,* 875 F.2d 24, 29 (2d Cir.1989) (firearms found behind a chair, in a nightstand drawer, in a dresser drawer, and leaning against wall).

### II. *Application of Bailey to Lattimore's Case* [1]

Lattimore's conviction was based upon the following facts adduced at trial.

On or about March 9, 1994 the Government informant, Dominic Watson, purchased two "dime" bags of cocaine from Lattimore at Lattimore's residence. Watson knew Lattimore well, having purchased drugs from him on numerous prior occasions. On March 9, 1994, as he had done when making drug purchases in the past, Watson first knocked on a window located at the front of the house. This was Lattimore's bedroom window, from which Lattimore could see who was calling. Watson then proceeded to the front door, where Lattimore met him carrying two bags of cocaine that he had brought from the bedroom. The drug transaction was carried out quickly and without discussion or incident in the front hallway of Lattimore's home, just inside the front door. The two men did not proceed any further into the house. Lattimore did not carry a gun and

---

1. It is undisputed that *Bailey* must be applied retroactively. *See United States v. Turner,* 914

did not mention having a gun (or any other weapon).

After the drug transaction was completed, Watson asked Lattimore about a pistol, stating that he was interested in buying one. Lattimore then lead Watson to his bedroom where he retrieved a handgun from a dresser drawer. The two men eventually went out onto Lattimore's back porch and Lattimore shot the gun into the air in an effort to demonstrate how loud it was. Watson indicated to Lattimore that he would like a gun just like it. In fact, Watson wanted to buy Lattimore's gun, but Lattimore would not sell it.[2]

Later that day, the Lattimore residence was searched pursuant to a search warrant. Various items were seized from inside the house, including cocaine and a handgun.

### A) 'Use' of a Firearm

■ Under *Bailey's* construction of the word 'use,' these facts are not sufficient to support a finding that Lattimore's use of the gun in question was "an operative factor in relation to the predicate offense." *See* —— U.S. at ——, 116 S.Ct. at 505. During the March 9, 1994 drug transaction, which took place in the foyer of Lattimore's home, the gun was stored in a dresser drawer in a separate room. It was never even mentioned by Lattimore. Thus, none of the examples of 'use' given in *Bailey*—"brandishing, displaying, bartering, striking with, ... firing or attempting to fire, a firearm," or referring to a firearm so as to intimidate another person, —— U.S. at ——, 116 S.Ct. at 508—was present here. Instead, the evidence showed nothing more than the "inert presence of a firearm, [which,] without more, is not enough to trigger § 924(c)(1). A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds." *Id.*

This case is similar to *United States v. Santos*, 84 F.3d 43, *modified as to one defendant on other grounds*, 95 F.3d 116 (2d Cir. 1996). There, a drug sale took place in one room of an apartment while a firearm wrapped in brown paper was stored in the oven storage drawer in the kitchen. "There was no evidence adduced that the gun was brandished by the defendants or that the informants were otherwise made aware of its existence during the drug deal." *Id.* at 45. The Circuit, vacating the Section 924(c) conviction and sentence, stated that "where an offender conceals a gun nearby to be at the ready for an imminent confrontation ... 'use' cannot extend to encompass this action. If the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not 'used'." *Id.* at 46 (quoting *Bailey*, —— U.S. at ——, 116 S.Ct. at 508). *See also United States v. Bermudez*, 82 F.3d 548, 550 (2d Cir.1996) (guns discovered in closet during search of defendant's home not 'used' because, "[a]lthough they were in proximity to drugs stored in the closet, and were at the ready, there [was] no evidence that the guns were actively employed in connection with a drug crime"); *United States v. Giraldo*, 80 F.3d 667, 675 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 135, 136 L.Ed.2d 83 (1996) (gun stored underneath change dish between front car seats during drug sale from car was not 'used' because it was not fired, was not visible, and was not mentioned); *United States v. Canady*, 920 F.Supp. 402, 405 (W.D.N.Y.1996) (gun not 'used' where it was stored underneath loveseat cushion where defendant was sitting); *Turner*, 914 F.Supp. at 50 (government conceded that where defendant was arrested in guest bedroom on second floor of house, and a handbag containing drugs and a gun was discovered on a table on the first floor during the subsequent search of the entire house, defendant did not 'use' the gun).

The events that transpired after the drug transaction do not change this result. Only after the transaction was complete, and at Watson's inquiry, did Lattimore take Watson to the bedroom where the gun was stored. Thus, while Lattimore brandished and indeed even fired the gun at that time, none of those

---

**2.** The record is not entirely clear whether Watson and Lattimore may have also discussed guns and Watson's desire to obtain one at a time prior to March 9th. However, it is clear from the record that guns were not discussed immediately prior to, during, or in relation to the drug purchase on March 9th.

actions took place "during and in relation to ... the drug trafficking crime." —— U.S. at ——, 116 S.Ct. at 505. Accordingly, Lattimore's conviction for using a firearm in violation of § 924(c)(1) must be vacated.

## B) 'Carrying' A Firearm

■ Section 924(c)(1) also makes it an offense to 'carry' a firearm during and in relation to a drug trafficking crime. While the meaning of 'carry' was not addressed in *Bailey*, it has been discussed in several subsequent Second Circuit decisions. In this case, however, I find that it would be inappropriate for me to consider whether the evidence supports a 'carrying' conviction. Although Lattimore's indictment states that he "did knowingly, willfully and unlawfully **use and carry** a firearm," the Government did not prosecute its case against Lattimore on any theory except the 'use' theory. The 'carry' prong dropped out of the case. The jury was charged only on 'use' of a firearm; the jury made a finding only on 'use' not 'carrying'; the Verdict Form completed by the jury found that Lattimore "did knowingly use a firearm. . . ."; and the Judgment states that Lattimore was "adjudged guilty" of "Use of a Firearm During and in Relation to a Drug Trafficking Crime". No objections were raised to any of this language. Accordingly, I find that the Government failed to prosecute the 'carry' prong of Section 924(c)(1). Thus, it would be improper for me now to consider whether there was sufficient evidence to support a conviction for 'carrying'.

■ Even if I were to do so, however, the evidence against Lattimore appears insufficient to support a conviction for 'carrying' under Section 924(c). Thus, I do not believe that the evidence supports either the 'use' or 'carrying' of the firearm and therefore this count must be dismissed. *See Griffin v. United States*, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991).

■ Prior to *Bailey*, courts generally had agreed that 'carrying' was to be interpreted narrowly, while 'use' was interpreted more broadly. *Canady*, 920 F.Supp. at 406 (citations omitted). Since *Bailey*, 'carrying' remains strictly construed. In *Santos, supra,* the Court of Appeals noted that neither the legislative history of Section 924(c)(1) nor the case law in the Circuit suggests that the term 'carry' should be construed as having any meaning beyond its literal meaning. *Id.* at 46–47 (quoting *United States v. Feliz–Cordero*, 859 F.2d 250, 253 (2d Cir.1988)). Thus, while *Bailey* suggested that a defendant may be convicted of 'carrying' a firearm if he has "put a gun into place to protect drugs or to embolden himself"—— U.S. at ——, 116 S.Ct. at 507—Second Circuit law requires " 'at least a showing that the gun was within reach during the commission of the drug offense' in order to sustain a conviction for 'carrying' a firearm." *Santos*, 84 F.3d at 47 (quoting *Feliz–Cordero*, 859 F.2d at 253); *see also United States v. Pimentel*, 83 F.3d 55, 59 (2d Cir.1996) (a gun may be 'carried' within the meaning of Section 924(c) when it is "concealed in a location that is immediately accessible to a perpetrator of a drug offense"); *Canady*, 920 F.Supp. at 407 (a defendant may be found to have been carrying a weapon even if the weapon was not in his hands or on his person, **if the weapon was within his immediate reach**) (emphasis added).

Here, the gun was not on Lattimore's person nor within his reach. It was in an entirely different room, in a dresser drawer. Thus, there is no evidence to support a claim that Lattimore 'carried' the gun for purposes of Section 924(c).

## CONCLUSION

Arthur Lattimore's motion pursuant to 28 U.S.C. § 2255 is granted.

The entire original sentence and judgment, entered on October 12, 1995, is vacated in all respects and the case will be scheduled for resentencing on count one only. *See United States v. Bermudez*, 82 F.3d 548, 550 (2d Cir.1996); *see also Reyes v. United States*, 1996 WL 617326 (S.D.N.Y. Oct. 25, 1996) (96–CIV–2096 CSH); *Pedretti v. United States*, 1996 WL 340769 (N.D.N.Y. April 26, 1996) (96–CV–0146). Count two of the indictment is dismissed, with prejudice. The United States Marshal is directed to lodge a detainer against Lattimore and he is to be detained

pending resentencing pursuant to 18 U.S.C. § 3143.

The Probation Office is directed to prepare an amended Presentence Investigation Report as soon as possible. Thereafter, the parties are directed to meet with the probation officer to resolve any disputes and to submit new "Statements with Respect to Sentencing Factors."

Resentencing is scheduled for December 18, 1996, at 10 a.m.

IT IS SO ORDERED.