Hector GUZMAN–RIVERA, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil No. 96–1318 (JP).
Criminal No. 92–326 (JP).

United States District Court,
D. Puerto Rico.

June 18, 1996.

**140**

Héctor Guzmán Rivera, Jesup, GA, Rachel Brill, Hato Rey, P.R., for Plaintiff.

Stephen Muldrow, Assistant United States Attorney, Hato Rey, P.R., for Defendant.

## OPINION AND ORDER

PIERAS, District Judge.

In this civil case, plaintiff moves for relief pursuant to 28 U.S.C. § 2255, seeking to modify the sentence imposed by this Court in Criminal Case No. 92–326 (JP). The Court has before it movant's motion for relief (**docket No. 1**), the Government's response (**docket No. 3**), the motion for vacation from petitioner's court-appointed attorney (**docket No. 4**), petitioner's response to the United States Government (**docket No. 5**), petitioner's informative motion to the Court (**docket No. 6**) and, finally, a reply from petitioner's court-appointed attorney to the United States Government's response (**docket No. 7**). Since the record and motions filed in this case reveal that the movant is entitled to relief under 28 U.S.C. § 2255, his petition is hereby **GRANTED** without a hearing.

## I. BACKGROUND

The following summary of facts is drawn principally from the decision of the Court of Appeals for the First Circuit in *United States v. Guzmán–Rivera*, 68 F.3d 5 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 970, 133 L.Ed.2d 891 (1996). On the evening of December 3, 1992, movant Guzmán–Rivera arrived at the Carib Inn in the Isla Verde area of San Juan driving an automobile. A confidential informant sat on the passenger side in the front seat and co-defendant Velázquez–Márquez was in the back. Undercover agent Moran from the Drug Enforcement Agency (DEA) leaned through the window on the passenger side and asked if they had the heroin; the co-defendants responded affirmatively. After viewing the heroin, Moran indicated he would return shortly with the money. Instead, he gave a prearranged arrest signal to nearby undercover officers, who moved in to arrest Guzmán–Rivera and Velázquez–Márquez. One of these undercover officers, a Puerto Rico police officer assigned to a special DEA task force, testified that as he was approaching the car after Moran's arrest signal, he saw Guzmán–Rivera draw a revolver from his waist, and then lean forward as if he were

placing an object on the floorboard. While Guzmán–Rivera was placed under arrest, a revolver was found on the driver's side, beneath the foot petals. A speed loader fitting the revolver was found on Guzmán–Rivera's body.

On December 9, 1992, a federal grand jury returned a three-count indictment against movant Guzmán–Rivera and co-defendant Velázquez–Márquez. Count One charged co-defendant Velázquez–Márquez with use of a telephone to facilitate a drug transaction, in violation of 21 U.S.C. § 843(b). Counts Two and Three charged both co-defendants with aiding and abetting each other in the possession with intent to distribute approximately 265.9 grams, gross weight, of heroin, in violation of 21 U.S.C. § 841(a)(1); and using firearms in relation to a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1). Co-defendant Velázquez–Márquez pleaded guilty on May 12, 1993. On May 14, 1993, a jury found Guzmán–Rivera guilty as to Counts Two and Three. On September 9, 1993, movant was sentenced to 87 months as to the possession count, based upon a total offense level of 26 and a criminal history category of II. He was sentenced to a mandatory five-year sentence with respect to Count Three, to be served consecutively to the sentence imposed for Count Two (docket No. 77, Criminal Case No. 92–326 (JP)).

## II. MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255

Mr. Guzmán–Rivera has now brought this motion pursuant to 28 U.S.C. § 2255, alleging that his convictions under federal law should be vacated since this Court does not have jurisdiction over him. Guzmán–Rivera argues that Congress does not have the authority to adopt general police power statutes nor to create agencies to enforce them. Movant also challenges his conviction under 21 U.S.C. § 841(a)(1), arguing that there was insufficient evidence of a conspiracy to hold him accountable for the heroin seized from co-defendant Velázquez–Márquez. In his informative motion to the Court (docket No. 6), petitioner asserts that his court-appointed attorney failed to challenge his conviction under 21 U.S.C. § 841(a)(1), failed to present his double jeopardy challenge to the $50.00 special assessment imposed pursuant to 18 U.S.C. § 3013, and failed to argue that his role in the offense was minimal. Finally, Guzmán–Rivera asserts that his sentence for use of a firearm in relation to a drug trafficking offense should be vacated in light of the United States Supreme Court's decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

■ We dispose of movant's challenge to this Court's jurisdiction swiftly. The authority of Congress to enact laws proscribing drug trafficking and the use or carriage of firearms in relation to drug trafficking emanates from the Commerce Clause of the United States Constitution. *See* U.S. Const., art. I, § 8, cl. 3. "The authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question." *United States v. López,* —— U.S. ——, ——, 115 S.Ct. 1624, 1629, 131 L.Ed.2d 626 (1995) (citing *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 256, 85 S.Ct. 348, 356, 13 L.Ed.2d 258 (1964), which in turn quoted from *Caminetti v. United States,* 242 U.S. 470, 491, 37 S.Ct. 192, 197, 61 L.Ed. 442 (1917)). It is well known that Puerto Rico serves as a conduit for transporting drugs from South America and other origins to the mainland. We reject movant's argument that this Court lacks jurisdiction to enforce federal laws prohibiting drug trafficking and the use of firearms in relation to such conduct. *Accord United States v. Deases,* 923 F.Supp. 170 (D.Kan. 1996).

■ Movant's conspiracy argument is equally without merit. Movant's extensive discussion of conspiracy law is inapposite since he was not charged with nor convicted of conspiracy. Rather, he was convicted by a jury of his peers of aiding and abetting Velázquez–Márquez in the possession with intent to distribute heroin and using firearms in relation to this offense. Regardless of the nature of movant's claim with respect to the sufficiency of the evidence against him—and whether his role in the offense was minor—it should have been raised on direct appeal. *Knight v. United States,* 37 F.3d 769, 772 (1st

Cir.1994). This Court will not allow movant to use § 2255 as a substitute for a direct appeal. *Id.* at 773. Moreover, it is clear from the evidence that petitioner's role in the offense was anything but minor. He drove the vehicle that served as the venue for the drug transaction and was armed to confront any contingency. "Absent misapplication of the Guidelines, the mere fact of disparity [between sentences imposed on co-defendants] is of no consequence." *United States v. Geraldo Rodriguez*, 63 F.3d 1159, 1168 (1st Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 681, 133 L.Ed.2d 529 (1995).

■■■ Petitioner's suggestion in his informative motion to the Court that imposition of the $50.00 special assessment under 18 U.S.C. § 3013 in some way offends the Double Jeopardy Clause of the Fifth Amendment is frivolous. In a single proceeding the multiple-punishment issue is limited to ensuring that the "total punishment did not exceed that authorized by the legislature." *United States v. Halper*, 490 U.S. 435, 450, 109 S.Ct. 1892, 1903, 104 L.Ed.2d 487 (1989). Since both the criminal sentence and the special assessment imposed on petitioner in the criminal case were authorized by Congress, there simply is no Double Jeopardy issue involving multiple punishments.

Movant's final challenge based on *Bailey* may be considered as having merit. Prior to *Bailey*, the First Circuit used a "facilitative nexus" test to determine whether a defendant had used a firearm "in relation to" a drug trafficking crime. *See United States v. Eaton*, 890 F.2d 511, 512–13 (1st Cir.1989), *cert. denied*, 495 U.S. 906, 110 S.Ct. 1927, 109 L.Ed.2d 291 (1990). Under this test, "the mere presence of firearms is not sufficient for a conviction, for there must be a nexus between the firearm and the facilitation of the transaction at issue." *United States v. Reyes Díaz*, 797 F.Supp. 96, 97 (D.P.R.1992) (insufficient evidence to support 18 U.S.C. § 924(c)(1) count where defendant was arrested at airport with heroin and firearm was found later at his apartment).

*Bailey* involved the consolidated appeal of two defendants convicted under 18 U.S.C. § 924(c)(1). Mr. Bailey was stopped by police officers for a traffic violation. When Bailey failed to produce a driver's license, the officers asked him to step out of the car. As he did so, the officers saw him push something between the seat and the front console. A search of the passenger compartment revealed 30 grams of cocaine. After arresting Bailey, the officers searched the trunk of the car where they found cash and a pistol. Bailey was convicted by a jury for violation of § 924(c)(1). The Court of Appeals for the District of Columbia rejected his claim that the evidence was insufficient to support this conviction. *Bailey*, —— U.S. at ——, 116 S.Ct. at 504.

In *Robinson v. United States*, the companion case to *Bailey*, Ms. Robinson sold crack cocaine to an undercover officer. The officer observed Robinson retrieve the drugs from the bedroom of her one-bedroom apartment. After a second controlled buy, the police executed a search warrant of the apartment. Inside a locked trunk in the bedroom closet, among other items, the police found an unloaded .22–caliber Derringer, 10.88 grams of crack cocaine and a marked $20 bill from the first controlled buy. A divided panel of the Court of Appeals for the District of Columbia reversed the District Court's denial of Robinson's motion for a judgment of acquittal with respect to the "using or carrying" conviction. *Bailey*, —— U.S. at ——, 116 S.Ct. at 504. To resolve the apparent inconsistencies in these two decisions, the Court of Appeals consolidated the two cases and reheard them en banc. In a divided opinion, a majority of the court adopted a new standard under which 924(c)(1) is violated when a person places a firearm in a place so that it is accessible if and when needed to facilitate a drug trafficking crime. The court affirmed both Bailey's and Robinson's convictions under this new standard. *Id.* at ——, 116 S.Ct. at 504–5.

The issue before the Supreme Court in *Bailey* was whether proximity and accessibility of a firearm to drugs or drug proceeds is alone sufficient to support a conviction for "use" of a firearm during and in relation to a drug trafficking offense. The Supreme Court clarified the meaning of "use" under 18 U.S.C. § 924(c)(1) by concluding that it requires "active employment" of a firearm such

as brandishing, displaying, bartering, striking with, and firing or attempting to fire it. *Id.* at ——, 116 S.Ct. at 508. The Court noted that the "carry" prong of § 924(c)(1) brings some offenders who would not satisfy the "use" prong within the reach of the statute and remanded both *Bailey* and *Robinson* for consideration of "carry" as a basis for upholding the convictions. *Id.* at ——, 116 S.Ct. at 509.

### A. Retroactivity of *Bailey*

 Before proceeding to the merits of movant's petition, we must determine whether *Bailey* should apply retroactively to cases subject to collateral attack. The Government does not address this issue in its brief. We therefore presume that the Government concedes that it does. The United States Supreme Court has held that a defendant may seek relief under 28 U.S.C. § 2255 for non-constitutional violations where the claimed error of law presents an exceptional circumstance where the need for the remedy is apparent and reveals a fundamental defect which inherently results in a complete miscarriage of justice. *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (citing *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). An intervening judicial decision that makes clear that the defendant was convicted and punished for an act that the law does not make criminal any more involves such an exceptional circumstance. *Davis,* 417 U.S. at 346, 94 S.Ct. at 2305. If movant's contention is true, he did not actively employ the weapon found on the floorboard of the car within the meaning of *Bailey,* and hence he was convicted for acts that the law no longer considers criminal under the definition announced by the Supreme Court in *Bailey.* Therefore, like other courts that have considered the issue, we conclude that *Bailey* is to be applied retroactively to motions pursuant to 28 U.S.C. § 2255. *See, e.g., Irizarry–Sanabria v. United States,* 916 F.Supp. 106, 113 (D.P.R.1996); *United States v. Fletcher,* 919 F.Supp. 384, 389 (D.Kan.1996); *Bell v. United States,* 917 F.Supp. 681, 684 (E.D.Mo. 1996).

### B. Movant's Conviction Under *Bailey*

 Numerous courts have upheld pre-*Bailey* convictions for violations of 18 U.S.C. § 924(c)(1) under the "carry" prong of the statute. *See, e.g., United States v. Ramírez–Ferrer,* 82 F.3d 1149 (1st Cir.1996); *United States v. Manning,* 79 F.3d 212 (1st Cir.1996); *United States v. Flores,* 1996 WL 32505 (E.D.La.1996); *Deases,* 923 F.Supp. 170; *Putze v. United States,* 920 F.Supp. 92 (E.D.Va.1996); *United States v. Wiley,* 922 F.Supp. 1405 (D.Minn.1996). The evidence shows that Guzmán–Rivera carried a gun in relation to a drug trafficking offense. Police Officer Joel Peña–Rodríguez testified that he saw Guzmán–Rivera extracting a revolver from his waist as he approached the car after Morán gave the arrest signal and that he yelled, "He's got a weapon," to alert fellow officers. Trial Tr., First Day, at 79. Officer Peña–Rodríguez also testified that Guzmán–Rivera put the weapon down and that it was later seized from the floor of the car. Trial Tr., First Day, at 87. Agent Juan Torres, of the Bureau of Alcohol, Tobacco and Firearms, testified that upon frisking Guzmán–Rivera he found in one of his pockets a speed loader with six rounds of ammunition that fit the revolver. Trial Tr., First Day, at 95. As stated by the Court of Appeals for the First Circuit, "[w]e need not determine the precise contours of the "carry" prong here, however, as [defendant's] actions meet any reasonable construction of the word." *Manning,* 79 F.3d at 216.

However, we will not deny movant's motion to vacate by relying on the "carry" prong of the statute for two reasons. Foremost, the Government agrees with Guzmán–Rivera that the firearm conviction should be vacated. Secondly, the government prosecuted Count Three almost exclusively on a theory of "use." The indictment alleged that: "On or about December 3, 1992, ... Rafael Velázquez–Márquez and Hector Guzmán–Rivera, the defendants herein, aiding and abetting each other, did knowingly and unlawfully *use* firearms ... during and in relation to the commission of an offense punishable under the Controlled Substances Act ..." (emphasis added). Trial Tr., Third Day, at 33. The Assistant United States

Attorney argued in closing that the evidence demonstrated that Guzmán–Rivera was guilty of *using* firearms while in the commission of a heroin transaction. Trial Tr., Third Day, at 14. Finally, the jury sent a note to the Court after commencing deliberations in which it requested clarification of whether Guzmán–Rivera was charged with "possession" or "use" of a firearm and to explain the word "used" in Count Three. Trial Tr., Third Day, at 46. The Court called the jury before it and stated that defendant was charged with "use" of a firearm and then added:

> The phrase "uses a firearm" means having a firearm or firearms available to assist or aid in the commission of the crime alleged in Count Two of the indictment.

> In determining whether the defendant used a firearm, you may consider all of the factors received in evidence in the case, including the nature of the underlying crime of drug trafficking alleged, the proximity of the defendant to the firearm in question, the usefulness of the firearm to the crime alleged, and the circumstances surrounding the presence of the firearm.

> The Government is not required to show that the defendant actually displaced or fired the weapon. The Government is required, however, to prove beyond a reasonable doubt that the firearm was in the defendant's possession or under the defendant's control at the time that a crime of drug trafficking was committed.

Trial Tr., Third Day, at 46–47. This definition was correct as the law stood at that time and was upheld by the First Circuit on appeal.

The Supreme Court states in *Bailey:* "If the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not 'used.'" *Bailey,* —— U.S. at ——, 116 S.Ct. at 508. Immediately following the above citation in *Bailey,* the Supreme Court indicates the difficult line-drawing problems created by an expansive definition of "use" focusing on accessibility to the firearm during the drug trafficking crime: "How 'at the ready' was the firearm? Within arm's reach? In the room? In the house? How long before the confrontation did he place it

there? Five minutes or 24 hours?" *Id.* at ——, 116 S.Ct. at 509. These examples do not involve instances, such as the case at bar, where the gun was actually handled or where someone on the other side of the transaction was aware that the defendant had a gun. In the case at bar, the gun was disclosed since the defendant had it in his hand during the transaction as seen by Officer Peña–Rodríguez. As noted above, Officer Peña–Rodríguez even shouted at his fellow officers to alert them to the danger of the firearm. We do not know if perhaps defendant's decision to place the gun on the floorboard was motivated by Officer Peña–Rodríguez' warning. The fact that at the end of the transaction and immediately before his arrest, defendant decided not to fire the gun and instead placed it on the floorboard is of no importance—at this point he had already used the firearm within the clarified definition enunciated in the *Bailey* opinion.

We conclude that a jury duly instructed as to the meaning of "use" according to *Bailey* could have found that this defendant "used" the firearm in violation of 18 U.S.C. § 924(c)(1) because his conduct showed "active employment" of the firearm. Nevertheless, various factors counsel against upholding the conviction: 1) the Court instructed the jury within the then prevailing meaning of "use" of a firearm—a meaning which is much more general and liberal than the restrictive definition adopted by the Supreme Court in *Bailey;* 2) the jury did not have an opportunity to analyze the question of "use of a firearm" under *Bailey;* 3) the Government moves this Court to vacate this Count. Not wishing to be more papal than the Pope, the Court hereby **DISMISSES** Count Three of the Indictment and **VACATES** defendant's sentence as to Count Three.

## C. Resentencing

■ Although the Government agrees with movant's request that the Court vacate his sentence on Count Three, it does ask that the Court resentence him on Count Two, taking into consideration that he possessed a firearm in relation to a drug trafficking offense. A district court may increase a defendant's sentence as to an offense that has not

been attacked as long as valid reasons exist to justify it, else the increase is deemed to be the result of vindictiveness. *United States v. Pimienta–Redondo*, 874 F.2d 9 (1st Cir. 1989), *cert. denied*, 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989). "When the conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal." *Pimienta–Redondo*, 874 F.2d at 14.

At the time of the original sentencing, this Court did not consider possession of a firearm in sentencing Guzmán–Rivera on the drug trafficking count since the firearm conduct was subject to a five-year mandatory sentence under Count Three. Pursuant to USSG § 2D1.1(b)(1), the base offense level for offenses involving drugs shall be increased by two levels if a dangerous weapon (including a firearm) was possessed during the commission of the offense.

This Court has imposed USSG § 2D1.1(b)(1) enhancements based on facts similar to those present in the instant case. In *United States v. Mena–Robles*, for example, defendants challenged imposition of a firearm enhancement based on the conduct of a coconspirator, arguing that the evidence was insufficient to support the two-level adjustment. 4 F.3d 1026 (1st Cir.1993). The evidence showed that the coconspirator—who was the body guard for the transaction—possessed five bullets compatible with a gun retrieved from just outside the car in which he and the defendants were seated when they were arrested. In upholding the sentences, the First Circuit held that the district judge (J. Pieras) could properly infer that the coconspirator had the gun on his person prior to ejecting it from the car. *Id.* at 1036.

Here, Agent Peña–Rodríguez testified that he saw defendant pull the revolver from his waist and lean forward, as if placing it on the floorboard. A firearm was later found under the pedals on the floorboard. Agent Torres testified that he frisked defendant and found a speed loader that matched the firearm in one of his pockets. As noted in *Mena–Robles*, this Court may properly infer from this evidence that defendant Guzmán–Rivera had the firearm on his person prior to placing it on the floorboard. Under USSG § 2D1.1, the base offense level for violations of 21 U.S.C. § 841(a)(1) involving 265.9 grams of heroin is 26. Under USSG § 2D1.1(b)(1), the base offense level is increased by two levels if a firearm was possessed during the offense. An adjusted base offense level of 28 and a Criminal History Category of II renders an imprisonment range of 87 to 108 months. Defendant was originally subject to an imprisonment range of 70 to 87 months on Count Two; the Court sentenced him to 87 months.

As the original sentence falls within the imprisonment range even with a two level enhancement for possession of a firearm, the Court deems it better to leave the sentence on Count Two undisturbed, as it was the original assessment as to punishment estimated by the Court. The Court hereby **ORDERS** the Clerk of the Court to refund the $50.00 special assessment imposed with relation to Count Three. The sentence on Count Two of 87 months will remain undisturbed, as well as the fine of Five Thousand Dollars ($5,000.00) and the term of supervised release of five (5) years, imposed at the time of the original sentence as to Count Two on September 9, 1993.

IT IS SO ORDERED.