**Juan BRACHE**

v.

**UNITED STATES of America.**

**C.A. No. 96–018L.**

United States District Court,
D. Rhode Island.

Feb. 28, 1997.

Francis J. Gillan, III, Providence, RI, for Plaintiff.

Zacheriah Chafee, Assistant U.S. Attorney, Providence, RI, for Defendant.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter arises from petitioner's conviction under 18 U.S.C. § 924(c)(1) (1994) for using or carrying a firearm during and in relation to a drug trafficking crime. Petitioner now moves to vacate his conviction or, in the alternative, for a new trial pursuant to 28 U.S.C. § 2255 (1994). Petitioner contends that the charge to the jury at his trial was inconsistent with the definition of "used" as explicated by the Supreme Court in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), and, therefore, his conviction should be vacated. For the reasons that follow, petitioner's motion to vacate or for a new trial is denied.

## I. Facts

As on appeal, the evidence must be considered in the light most favorable to the government. *See United States v. Abreu*, 952 F.2d 1458, 1460 (1st Cir.), *cert. denied*, 503 U.S. 994, 112 S.Ct. 1695, 118 L.Ed.2d 406 (1992) (applying standard on appeal). In 1993, petitioner was tried pursuant to a three count indictment. *United States v. Juan Brache*, CR 93–055L. Count I charged possession of a firearm following conviction of a felony in violation of 18 U.S.C. § 922(g)(1) (1994). Count II charged possession of cocaine with intent to distribute in contravention of 21 U.S.C. § 841(a)(1) (1994). Count III charged petitioner with using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (1994).

The following facts were adduced at trial. In April of 1993, Detectives Gannon and Drohan of the Providence Police Department's narcotics unit of the Special Investigation Bureau ("SIB") investigated activity in a second floor apartment at 154 Stanwood Street, Providence, a two-story deserted tenement. The officers had information from a confidential informant ("CI") that a man known as "Cuba" or "Hernandez" was selling cocaine from the second floor flat of an unoccupied two-story house at 154 Stanwood Street. The CI said that Cuba's modus operandi was to sit in the front windows of the apartment living room and watch for police activity. If there were no police officers around, he would make his sales. If he saw police in the area, he would take his drugs and other incriminating evidence to an area of the living room where there was a heater with a stove pipe plugged into the chimney. He had the stove pipe rigged so that, with a minimum of effort, he could move it, exposing the hole in the chimney. Then he would throw his drugs and other paraphernalia into the hole, and it would land at the bottom of the chimney shaft in the cellar in the soot near the clean-out door. When the police left the area, he would retrieve his contraband and continue his drug business ventures. To verify this, the officers repeatedly drove by the building and saw petitioner sitting in the window of the second floor apartment. Based on this information, they secured a search warrant.

On April 28, 1993, they executed that warrant. A team of SIB detectives entered 154 Stanwood Street while Detective Drohan went to the cellar. He saw, through the

clean-out door, a pistol and a Marathon cigarette pack fall to the bottom of the chimney at the same time that the rest of the detectives were making a suitable amount of noise entering the second floor. The cigarette pack contained twenty-one plastic bags of cocaine. The pistol, a .38 caliber Smith & Wesson revolver, was later found to be operable. Drohan also saw several .38 caliber bullets at the bottom of the chimney shaft. An inspection of the cigarette packs and pistol failed to reveal any fingerprints.

As the other detectives entered the apartment through the door to the kitchen on the second floor, they saw petitioner walk into the kitchen from the living room alone. No other persons were in that front room which overlooked Stanwood Street at the time. Only two other people—a woman known to the policemen as a prostitute, and an elderly drunkard, known to the policemen only by sight—were in the apartment when the detectives entered, and they were in the kitchen.

Detective Gannon noticed the space heater in the corner of the living room with its stove pipe connected to an opening in the chimney shaft. Gannon moved the pipe slightly and dropped an ashtray down the chimney. Drohan saw it land in the same place as the pistol and cigarette pack had landed in the cellar in the soot at the base of the chimney. Drohan then went up to the second floor apartment, and he noticed petitioner smoking a Monarch cigarette, the same brand as the cigarette pack that had fallen down the chimney shaft.

While the police were present, six or seven people came to the door of the apartment, asked for "a bag," and pushed money through a slot.

At the conclusion of the trial, the Court charged the jury on the law relating to all three counts of the indictment. The charge on Count III included instructions as to both the "use" and "carry" prongs of § 924(c)(1) in a manner consistent with existing circuit precedent. The jury found petitioner guilty on all three counts, and the Court imposed a twenty-one month sentence of incarceration, followed by a three-year period of supervised release, on Counts I and II, to run concur-

rently. On Count III, the Court imposed the mandatory five year sentence of imprisonment, to be served consecutively to the sentences imposed on Counts I and II.

Petitioner appealed his convictions on grounds unrelated to the § 924(c)(1) charge. The First Circuit Court of Appeals affirmed the convictions in an unpublished decision, *United States v. Juan Brache,* No. 94–1366 (Feb. 9, 1995).

Subsequently, the Supreme Court announced its decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). In *Bailey,* the Court held that "use" of a weapon "during and in relation to" a drug trafficking crime requires *"active employment* of the firearm by the defendant." *Id.* at ——, 116 S.Ct. at 505. Consequently, the Court deemed "mere possession" of a firearm insufficient to constitute "use" within the meaning of § 924(c)(1). *Id.* at ——, 116 S.Ct. at 506.

In light of *Bailey,* petitioner contends that the conviction and sentence imposed on Count III of the indictment should now be vacated. In the alternative, petitioner seeks a new trial on that Count. Petitioner's principal contention is that the conviction should be vacated because the jury instruction concerning "use" was inconsistent with the definition articulated in *Bailey,* and this Court should not reevaluate the evidence in order to uphold the conviction under the "carry" prong of § 924(c)(1). Petitioner also argues that the evidence fails to support his conviction under either the "use" or "carry" prongs. In contrast, the government asserts that there was ample evidence to support petitioner's conviction under the "carry" prong of § 924(c)(1), and this Court should uphold petitioner's conviction on that basis.

After hearing oral arguments on petitioner's motion to vacate or, in the alternative, for a new trial, the Court took the case under advisement. The matter is now in order for decision.

## II. Standard of Review

28 U.S.C. § 2255 (1994) governs habeas corpus petitions by prisoners in federal custody:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

## III. Analysis

In *Bailey*, the Court held that conviction under the "use" prong of § 924(c)(1) can only occur if the defendant "actively employed the firearm during and in relation to the predicate crime." *Id.* at ——, 116 S.Ct. at 509.[1] The Court stated that " 'use' must connote more than mere possession of a firearm by a person who commits a drug offense." *Id.* at ——, 116 S.Ct. at 506. Rather, active employment "includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* at ——, 116 S.Ct. at 508. The Court noted that its "more limited, active interpretation of 'use' preserves a meaningful role for 'carries' as an alternative basis for a charge." *Id.* at ——, 116 S.Ct. at 507.

It is undisputed that *Bailey* narrowed the broad definition of "use" formerly employed by the First Circuit. *See, e.g., United States v. Cleveland,* 106 F.3d 1056, 1065–66 (1st Cir.1997).[2] It is also undisputed in this case that at trial the government did not adduce evidence that petitioner "used" the firearm, as defined by *Bailey.* Therefore, petitioner argues that his conviction should be vacated or, at least, he should be given a new trial.

The crux of petitioner's argument is that his conviction cannot be upheld under the "carry" prong of § 924(c)(1). First, petitioner contends that because this Court did not define the term "carry" in its instructions to the jury, and the instructions concerning the "use" prong "subsumed" those given concerning the "carry" prong of § 924(c)(1), the jury did not reach the "carry" issue. Second, petitioner argues that this Court may not now act as a "thirteenth juror," reassessing the evidence in place of the actual jury. Finally, petitioner maintains that no evidence was presented at trial that the firearm was carried "during and in relation to" the drug trafficking crime, as the evidence reveals, at most, that the pistol was abandoned.

■ Addressing each of these arguments in turn, this writer concludes that they are without merit. First, the Court's instructions concerning the "carry" prong of § 924(c)(1) were legally sufficient. Although the Court did not explicitly define "carry," it is a word both commonly used and understood, and the case did not involve any nuance that would alter this common understanding. Moreover, the Court repeatedly stated that the defendant could be found guilty for "using or carrying" the firearm "during and in relation to" the drug trafficking crime. The jury was charged as follows:

> There are three essential elements which must be proved in order to establish the offense of using or carrying a firearm during and in relation to a drug trafficking crime. First, the defendant used or carried a firearm. Second, the defendant's use or carrying of the firearm was during and in relation to a drug trafficking crime. And, third, the defendant did so knowingly and intentionally.

**1.** 18 U.S.C. § 924(c)(1) (1994) provides, in pertinent part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such a crime of violence or drug trafficking crime, be sentenced to imprisonment for five years ... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convict-

ed of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.

**2.** The definition of "use" articulated in *Bailey* has been applied retroactively. *See. e.g., Objio–Sarraff v. United States,* 927 F.Supp. 30 (D.P.R. 1996).

The Court then charged the jury in accordance with the principles articulated by the First Circuit in *United States v. Payero*, 888 F.2d 928 (1st Cir.1989), a case which had repeatedly been cited with approval by the First Circuit. *See, e.g., United States v. Chapdelaine*, 989 F.2d 28, n. 5 (1st Cir.1993), *cert. denied*, 510 U.S. 1046, 114 S.Ct. 696, 126 L.Ed.2d 663 (1994); *United States v. Plummer*, 964 F.2d 1251 (1st Cir.), *cert. denied*, 506 U.S. 926, 113 S.Ct. 350, 121 L.Ed.2d 265 (1992). The Court charged, in pertinent part:

> Mere possession of a firearm is not enough. The Government must prove that firearm facilitated a drug trafficking crime. The defendant must have intended to have the firearm available for possible use during or immediately following a drug trafficking crime, or the firearm must have facilitated the transaction by lending courage to the defendant. The sole purpose for possession of the firearm need not be facilitation of drug trafficking so long as that was one of its possible and intended uses. All that is necessary is that the circumstances of the case show that the firearm facilitated or had a role in the crime such as emboldening the defendant.

■ It is by now well-settled that a court may consider whether the evidence is sufficient to support a pre-*Bailey* conviction under the "carry" prong of § 924(c)(1). Indeed, in *Bailey* itself, the Supreme Court remanded the case to the Court of Appeals for consideration of whether or not the conviction could be supported under the "carry" prong; the Court did not automatically order a new trial. — U.S. at —, 116 S.Ct. at 509. In addition, the First Circuit has reassessed § 924(c)(1) cases under the "carry" prong after *Bailey* altered the definition of "use." For example, in *United States v. Ramirez–Ferrer*, 82 F.3d 1131 (1st Cir.) (en banc), *cert. denied*, — U.S. —, 117 S.Ct. 405, 136 L.Ed.2d 319 (1996), the First Circuit vacated defendants' conviction under the "use" prong, but held that the case required reconsideration under the statute's "carry" prong. In that regard, the First Circuit stated: "it is clear that the Supreme Court's decision in *Bailey* requires us to consider whether the convictions on the gun count can be sustained despite the erroneous instruction [concerning the "use" prong] of the district court." *United States v. Ramirez–Ferrer*, 82 F.3d 1149, 1151 (1st Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 405, 136 L.Ed.2d 319 (1996). *See also United States v. Manning*, 79 F.3d 212 (1st Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 147, 136 L.Ed.2d 93 (1996) (upholding a pre-*Bailey* § 924(c)(1) conviction under the "carry" prong); *Guzman–Rivera v. United States*, 933 F.Supp. 138, 143 (D.P.R.1996) ("Numerous courts have upheld pre-*Bailey* convictions for violations of 18 U.S.C. § 924(c)(1) under the 'carry' prong of the statute").

Despite these precedents, petitioner argues that this Court cannot reassess the evidence in the present case under the "carry" prong of § 924(c)(1) because the jury instructions were insufficient with respect to that issue. Some courts have considered the emphasis given to the "carry" prong in the jury instructions and evidence presented by the government at trial when deciding whether to uphold a conviction on that basis. *See Alicea v. United States*, 931 F.Supp. 111 (D.P.R.1996) (dismissing a § 924(c)(1) conviction in light of *Bailey* when petitioner was charged solely under the "use" prong and jury instructions and government's proof focused only on "use"); *United States v. Caldwell*, 97 F.3d 1063 (8th Cir.1996) (vacating conviction under "use" prong and remanding for new trial on the "carry" prong when indictment charged defendant with "using" or "carrying" a firearm, but jury was not instructed on "carry" prong). However, First Circuit opinions addressing this issue have not delineated under what circumstances a court may or may not reevaluate a pre-*Bailey* § 924(c)(1) conviction under the "carry" prong. Indeed, in *Manning*, the First Circuit did not include the charge to the jury in its opinion and did not discuss whether or not instructions were originally given concerning the "carry" prong. Moreover, since this Court in this case did instruct the jury satisfactorily concerning both "use" and "carrying," and the government's evidence was relevant to the "carry" prong, the Court may clearly evaluate the evidence to determine if "carrying" was proved.

Therefore, according to both Supreme Court and First Circuit precedent, it is unnecessary for this Court to know precisely under which prong the jury convicted petitioner. This Court has not cast itself as a "thirteenth juror"; it is merely undertaking an inquiry pursued by many courts in the aftermath of the *Bailey* decision.

Of course, in order to uphold petitioner's conviction, this Court must conclude that there was sufficient evidence for the jury to find that petitioner "carried" the firearm "during and in relation to" the drug trafficking crime. In *Manning*, the First Circuit upheld a conviction under the "carry" prong of § 924(c)(1) when the evidence established that police observed the defendant holding a suitcase that was later found to contain two bags of cocaine, a handgun, six pipe bombs, and drug paraphernalia. The Court stated that "use" no longer covered defendant's actions, but those actions met "any reasonable construction" of "carry." *Manning*, 79 F.3d at 216. The Court then stated that "carry" has been "variously defined" as " 'to move while supporting (as ... in one's hands or arms),' 'to move an appreciable distance without dragging,' and 'to bring along to another place.' " *Id.* (quoting *Webster's Third New International Dictionary*, 343 (1986)).

Turning to the evidence in the present case, it is clear that it supports petitioner's conviction under the "carry" prong of § 924(c)(1). In fact, the present case is very similar to *Manning*. Although the police did not see petitioner carrying the firearm, it is abundantly clear that is precisely what occurred. It is obvious that the petitioner carried the drugs and firearm across part of the living room and threw them down the chimney shaft at the time that police officers entered the second floor apartment through the kitchen door. He was the only one in the living room at that time. Moreover, the jury convicted petitioner on Count I, so it necessarily found that he had possession of the pistol in the living room.

 This Court is also satisfied that petitioner "carried" the firearm "*during and in relation to*" the drug trafficking offense for which he was convicted. In *Manning*, the First Circuit found that § 924(c)(1) was satis-fied when the firearm and drugs were carried in the same briefcase at the same time. The Court stated:

> Evidence that Manning carried the gun and pipe bombs contemporaneously with the two bags of cocaine and the drug paraphernalia readily satisfies the 'during' requirement. Evidence that Manning carried the gun and bombs in the same briefcase as the drugs readily satisfies the 'in relation to' requirement.

*Id.* at 216–217 (citations omitted). Petitioner's argument that the gun and drugs may not have been carried contemporaneously in the present case is unavailing, for the pistol and cigarette pack containing the cocaine tumbled to the bottom of the chimney at the same time. Consequently, the only reasonable inference is that they were carried contemporaneously and deposited in the chimney together. In addition, unlike *Manning*, there is evidence that petitioner was engaged in the business of selling drugs precisely when he deposited the pistol and cocaine in the chimney hole. Indeed, as stated above, customers were coming to 154 Stanwood Street to exchange money for "a bag" while the police were present in the second floor apartment. Moreover, as stated in *United States v. Payero*, 888 F.2d 928, 929 (1st Cir.1989), the government need not prove that petitioner's "sole purpose in carrying the weapon ... [was] facilitation of the drug trafficking crime."

Petitioner contends that the present case is distinguishable from *Manning*, because, at best, the government has shown that petitioner was abandoning the firearm when he carried it. Therefore, petitioner claims that carrying the firearm could have been entirely unrelated to the drug trafficking crime. In so arguing, however, petitioner ignores the context in which the firearm and drugs were thrown down the chimney. At that time, petitioner was clearly in possession of the drugs with intent to distribute, the crime of conviction under Count II. The Court rejects petitioner's invitation to consider the moment it took to throw the pistol and drugs down the chimney separately from the other events that occurred. Moreover, as the First Circuit stated in *Ramirez–Ferrer*, "[t]he evi-

dence need not exclude every hypothesis of innocence."

## IV. Conclusion

For the foregoing reasons, petitioner's motion to vacate his conviction and sentence, or, in the alternative, for a new trial is denied.

It is so ordered.