USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-1575

 JUAN BRACHE,

 Petitioner, Appellant,

 v.

 UNITED STATES OF AMERICA,

 Respondent, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Ronald R. Lagueux, U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 
 Coffin and Bownes, Senior Circuit Judges.
 
 

 Spencer C. Demetros, by appointment of the court, with whom
Law Offices of Spencer C. Demetros was on brief for petitioner.
 Alicia M. Milligan, Assistant United States Attorney, with
whom Sheldon Whitehouse, United States Attorney, and Margaret E.
Curran and Zechariah Chafee, Assistant United States Attorneys,
were on brief for respondent.

January 22, 1999

 
 
 BOUDIN, Circuit Judge. Juan Brache sought collateral
relief under 28 U.S.C. 2255 from a jury conviction under 18
U.S.C. 924(c)(1) for using or carrying a firearm during and in
relation to a drug-trafficking crime. Brache claimed that the jury
instruction as to "use" of a firearm under section 924(c)(1) was
overbroad--measured by the definition later adopted by Bailey v.
United States, 516 U.S. 137, 143-46 (1995). Although the
government admits that the instruction was not correct, it argues
(and the district court agreed) that relief was not warranted. We
affirm.
 The necessary history is brief. In January 1994, Brache
was tried by a jury and convicted of possessing cocaine with intent
to distribute, 21 U.S.C. 841(a)(1), possessing a firearm after a
felony conviction, 18 U.S.C. 922(g)(1), and using or carrying a
firearm during and in relation to a drug crime, id. 924(c). As
required by statute, the 5-year prison sentence on the use or carry
count was made to run consecutively after the concurrent 21-month
sentences on the first two counts.
 At the time of the trial, various circuits, including
this one, employed a broad definition of "use," see, e.g., United
States v. McFadden, 13 F.3d 463, 465 (1st Cir. 1994), permitting
conviction if the weapon was merely available, and the jury was so
instructed. Brache made no objection at trial and no claim of
error on his direct appeal to this instruction. He did appeal on
other grounds, but these were rejected in an unpublished per curiamopinion, United States v. Brache, No. 94-1366 (1st Cir., Feb. 9,
1995). Later that same year, the Supreme Court in Baileyinterpreted the "use" requirement of section 924(c)(1) to require
active use, contrary to the definition previously approved in this
circuit and given in the instruction at Brache's trial. Bailey,
516 U.S. at 143-46.
 In January 1996, Brache moved under 28 U.S.C. 2255 to
invalidate his section 924(c)(1) conviction on the ground that the
instruction as to "use" was prejudicial error in light of Bailey. 
In February 1997, the district court denied the motion. See Brachev. United States, 957 F. Supp. 20 (D.R.I. 1997). The district
court assumed that Bailey would apply "retroactively" to a
conviction that became final before Bailey--as the Supreme Court
later confirmed in Bousley v. United States, 118 S. Ct. 1604, 1609-
10 (1998)--but concluded that the evidence warranted Brache's
conviction under the "carry" prong of the statute. See Brache, 957
F. Supp. at 25. Brache now appeals.
 We affirm the district court, but upon a different ground
based on an intervening Supreme Court decision. The district court
was quite right that the evidence would have justified a conviction
of Brache for carrying a firearm during and in relation to a drug
crime. The evidence at trial showed that the police had conducted
a raid in April 1993 at a house in Providence, Rhode Island. As
the police approached the second-floor apartment in which Brache
was located, a detective stationed in the basement (because
forewarned by a tip) witnessed a .38-caliber pistol, several .38-
caliber bullets, and a cigarette pack containing 21 small bags of
cocaine fall to the floor at the base of the basement chimney. A
vent in the wall of the living room in the raided apartment
connected to the chimney shaft. Other evidence proved that someone
was dealing drugs from the apartment.
 There were two other persons in the apartment along with
Brache when the police entered; one was a drunkard from the
neighborhood and another a prostitute. Yet both were in the
kitchen when the police entered, while Brache alone was seen
entering the kitchen from the living room. The gun and cigarette
pack bore no fingerprints, but Brache was smoking a brand of
cigarette matching the pack that had been dropped into the basement
along with the pistol. In short, the evidence pointed to Brache as
culprit, but this judgment was up to the jury.
 From the jury's verdict on the first two counts, it is
evident that the jury agreed that Brache was the one who possessed
the drugs, intended to distribute them, and also possessed the gun. 
To reach this conclusion, the jury must have believed that Brache
had carried the gun and the drugs into the living room and dropped
them into the basement; this inference, after all, was easy to draw
from the testimony and--more important--supplies the only direct
evidence to support any of his convictions. To this extent, the
jury's verdict itself establishes that Brache both possessed the
drugs with intent to distribute and carried the gun.
 However, we do not know from the jury verdict whether the
jury concluded that Brache carried the gun "during and in relation
to" a drug trafficking crime. It must be assumed, favorably to
Brache, that the jury convicted only on the use prong--easy to do
under the old definition of use--and never considered the carry
prong of the statute. And if the jury had confronted the carrying
prong, perhaps it might have thought that because Brache was
ridding himself of the evidence, when he carried the gun to the
vent, his carriage of the gun was no longer "in relation to" a drug
trafficking crime--or perhaps even that the drugs were no longer
being possessed with "intent to distribute."
 In practice, these niceties might well have meant nothing
to the jury once it concluded that Brache carried both the gun and
the drugs. But while the breath of the "during and in relation to"
requirement would easily have permitted conviction on the carry
prong, the vagueness of the phrase makes it harder to predict just
what a jury would have done on our somewhat unusual facts. 
Further, Supreme Court precedent leaves it unclear just how far we
are permitted to speculate about likely outcomes where, as here,
the mis-instruction makes it uncertain whether the jury did in fact
find a necessary element of the crime, an issue we are happy to
defer. Sullivan v. Louisiana, 508 U.S. 275 (1993).
 In all events, an intervening Supreme Court decision
virtually compels affirmance on a procedural ground. Because 
Brache did not object to the faulty "use" definition, he cannot
prevail on collateral attack unless he can show both "cause" and
"prejudice" or, alternatively, that he is "actually innocent." 
Murray v. Carrier, 477 U.S. 478, 485, 496 (1986). Brache claims
that he had "cause" for not objecting to the jury instruction
because there was "no reasonable basis in existing law," Reed v.
Ross, 468 U.S. 1, 15 (1984), for a challenge to the broad
definition of "use" in the court's instruction.
 In a different situation, we might find Brache's argument
attractive, since the instruction was at the time correct under
First Circuit precedent. Here, however, the Supreme Court has made
the determination for us. In Bousley, the Court ruled that a
section 2255 petitioner who argued that his guilty plea for "using"
a firearm under section 924(c)(1) was invalid--because the
definition of "use" explained to him by the district court had been
improperly broad--had procedurally defaulted because he had not
pursued the claim on direct appeal. See Bousley, 118 S. Ct. at
1611. The Court stated that "the Federal Reporters were replete
with cases involving challenges to the notion that 'use' is
synonymous with mere 'possession'" at the time of the petitioner's
plea. Id.
 Brache argues that Bousley does not control the result of
this case because this case involves jury instructions and Bousleyinvolved a defendant who pled guilty. But a defendant who pleads
guilty pursuant to a mistaken understanding of "use" is misled as
much as a jury given the same instruction. And, in either case,
the defendant had the opportunity to challenge the definition in
the trial court and on appeal. Indeed, the defendant who pleads
arguably suffers the greater disadvantage, since he alone may not
get his plea bargain if he insists upon reserving a legal issue for
appeal.
 We could also grant collateral relief if Brache showed
that he was actually innocent of a violation of section 924(c)(1),
a test that is implemented by asking if without the error "it is
more likely than not that no reasonable juror" would have convicted
him. Schlup v. Delo, 513 U.S. 298, 327 (1995). As we have already
said, the jury's implicit findings in this case are tantamount to
the conclusion that Brache carried the gun during and in relation
to a drug trafficking crime. This case is very far away from
actual innocence.
 On the present facts, few would think that Brache was
wrongly imprisoned under the use-and-carry statute. But more than
a few might be startled at Bousley's conclusion that the "use"
issue had to be raised at all to avoid the cause and prejudice bar. 
After all, the request for a narrower construction of "use" had
earlier been rejected in this circuit. See United States v.
Cleveland, 106 F.3d 1056, 1065 (1st Cir. 1997). One might question
whether litigants should be encouraged to raise over and over
issues seemingly already settled in the circuit.
 It is useful to put Bousley in context. The reach of
habeas as a remedy was greatly enlarged by the Supreme Court in the
1960s, e.g., Fay v. Noia, 372 U.S. 391 (1963), while at the same
time the Constitution was read to regulate more and more of state
criminal procedural and evidence law, e.g., Mapp v. Ohio, 367 U.S.
643 (1961); Miranda v. Arizona, 384 U.S. 436 (1966). As with most
revolutions, a counter-reaction developed, e.g., Friendly, Is
Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38
U. Chi. L. Rev. 142 (1970), but few of the landmark Warren Court
precedents have been explicitly overruled.
 Instead, both the Supreme Court and Congress have
maintained, at least theoretically, the potentially broad reach of
habeas but hedged it with a raft of new limitations that are
largely procedural in character, and are framed and applied with
considerable strictness. The cause and prejudice rule is major
element in this construct. Whether the present configuration of
habeas doctrine is the happiest solution may be open to debate, but
it is a compromise of conflicting pressures and is in any event
binding upon us.
 Affirmed.